# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| DANNY BRYANT, ET AL., | ) |
| Plaintiffs, | ) Case No. 2:13CV00022 |
| v. | ) **OPINION AND ORDER** |
| R.D. OAKS, SHERIFF OF WISE COUNTY, VIRGINIA, IN HIS INDIVIDUAL CAPACITY, ET AL., | ) By: James P. Jones<br>) United States District Judge |
| Defendants. | ) |

*Michael A. Bragg, Bragg Law, Abingdon, Virginia, for Plaintiffs; Henry S. Keuling-Stout, Keuling-Stout, P.C., Big Stone Gap, Virginia, for Defendants.*

In this § 1983 civil action against a deputy sheriff and his supervisor asserting a claim of malicious prosecution, the defendants have moved for summary judgment. Because it is undisputed that separate grand juries found probable cause to believe that a criminal offense had been committed, and the plaintiffs have presented no evidence that the deputy sheriff misled the prosecutors or the grand juries, I find that any alleged wrongful conduct by the deputy sheriff was insulated by the subsequent events as a matter of law. Additionally, I find that the plaintiffs have not made a sufficient showing under Rule 56 as to their supervisory liability claim. Therefore, I will enter judgment in favor of the defendants.

I.

Danny Bryant and Rockyfork Mine Electronics, Inc. ("Rockyfork"), a corporation owned by Bryant's wife, filed this action under 42 U.S.C. § 1983, seeking damages against R.D. Oakes, the Sheriff of Wise County, Virginia, and his former deputy sheriff, Carl W. Carico,[1] alleging a violation of the plaintiffs' Fourth Amendment rights. Following discovery, the defendants filed a joint Motion for Summary Judgment. The motion has been briefed and orally argued and is ripe for decision.

Viewing the facts contained in the summary judgment record in a light most favorable to the plaintiffs, reveals as follows. On July 30, 2004, in the course of his duties, Deputy Sheriff Carico questioned an employee of Falcon Coal Company, Douglas Collins, after Collins had been caught attempting to steal coal mining equipment from his employer. Based upon Carico's suspicions that the plaintiff Danny Bryant had been purchasing stolen mining equipment, Collins agreed to attempt a sale of mining equipment, including what is referred to as a "bridge and firing package,"[2] to Bryant as part of a sting operation. However, the equipment was not actually stolen, but rather borrowed from Falcon Coal for

---

[1] The plaintiffs misspelled both defendants' last names in their Complaint. Defendant Carico is referred to in the Complaint as "Carrico" but it appears from the record that his name is spelled "Carico." The sheriff is named Oakes and not "Oaks."

[2] This equipment helps control an underground mining machine. (Bryant Dep. 22, ECF No. 28-25.)

purposes of the sting operation. Bryant paid a total of $2,500 for the equipment, which included a $1,500 payment at the time of the transaction and $1,000 credit for money Collins owed Bryant. Collins wore a wire, which recorded the transaction. The recording of the transaction was apparently misplaced and later found, and the parties vigorously dispute both the authenticity of the recording and the circumstances surrounding the transaction.

Based on these events, on August 19, 2004, Deputy Sheriff Carico submitted sworn criminal complaints to a state magistrate, who issued arrest warrants against Bryant for multiple charges. These charges included conspiracy to commit grand larceny, conspiracy to commit money laundering and money laundering, conspiracy to buy and receive stolen property, and two counts of buying and receiving stolen property. The sworn criminal complaints that supplied probable cause for each of these charges were essentially identical. In relevant part, the complaints recited that Bryant had previously made arrangements with Collins to purchase mining equipment,[3] and that these transactions were consummated on July 30, 2004. The complaints then alleged that "Mr. Bryant acknowledge[d] during the purchases that he kn[ew] the property [wa]s stolen and t[old] Mr.

---

[3] All of the criminal complaints except for one stated that Bryant had agreed on June 30, 2004 to purchase a bridge and a firing package for a total of $2500, but one of the complaints stated that the agreement was on July 1, 2004, to purchase two bridges and a firing package for $3300.

Collins if anyone ask[ed] about it, to deny any knowledge." (*See, e.g.,* Mem. Opp'n Mot. Summ. J. Ex. 7, ECF No. 29-7.) The complaints stated that upon questioning by Carico and another officer after making the purchases, Bryant denied any knowledge of the equipment. He eventually relented, however, and admitted purchasing the equipment. The property was then returned to its owner, Falcon Coal. Nowhere did the complaints specifically recite that the property at issue was not actually stolen, but borrowed from Falcon Coal.

On September 13, 2004, a civil forfeiture proceeding was initiated based on the same allegations, supported by a sworn information signed by Carico. Subsequently, Carico served a seizure warrant on Bryant and Rockyfork, and seized Rockyfork's entire inventory of electronic mining equipment, which the plaintiffs claim was valued at hundreds of thousands of dollars. The equipment was placed in a locked construction trailer by Sheriff Oakes.

On December 3, 2004, the state prosecutor obtained an indictment on identical charges as the arrest warrants. Carico acknowledges that he was the lead investigator at the time and that it would have been customary for him to appear before the grand jury, but he asserts that he does not remember whether he actually testified or not. No other evidence has been presented regarding the substance of the grand jury proceedings.

After the indictment was issued, the case apparently descended into a deep freeze. No action was taken regarding either the indictment or the civil forfeiture by either the prosecutor or Bryant's defense attorney for several years, during which time there was, for various reasons, turnover within the prosecutor's office and Sheriff Oakes' office. On April 20, 2009, a different prosecutor obtained a new indictment that was identical to the previous indictment, but with two additional charges based on Bryant's alleged "attempt" to receive stolen property. By that time, Carico was no longer employed by Sheriff Oakes, and he did not testify before the grand jury.

Bryant waived a jury and a bench trial was conducted on March 26, 2010. Thereafter, on August 11, 2011, an order was entered by the court dismissing all charges. Although no opinion was issued by the state judge and the transcript of the court proceedings is not in the record, the parties agree that the court based its decision on the fact that the heart of the case — the sting operation against Bryant — involved conduct that was not then illegal under Virginia law. At that time, in 2004, the Virginia criminal statute governing receipt of stolen goods stated the following:

> If any person buy or receive from another person, or aid in concealing, *any stolen goods or other thing, knowing the same to have been stolen,* he shall be deemed guilty of larceny thereof.

Va. Code Ann. § 18.2-108 (emphasis added). In other words, the statutory text unambiguously required as an element of the crime that the property in question be stolen; it did not criminalize receipt of property *thought* to be stolen but not *actually* stolen, such as in the sting operation at hand. *See Gilland v. Commonwealth*, 35 S.E.2d 130, 131 (Va. 1945) (stating that conviction under § 18.2-108 required proof '"[t]hat "the goods or other things" were previously stolen by some other person'" (citation omitted)); 66 Am. Jur. 2d, *Receiving Stolen Property* § 7 ("An essential element of the offense of receiving stolen property is that the property received must be stolen property.").

This plain statutory meaning was further reinforced in 2008, prior to the second indictment in this case, when the Virginia legislature amended § 18.2-108, adding the following language plainly meant to address law enforcement operations such as that involved in this case:

> If any person buys or receives any goods or other thing, used in the course of a criminal investigation by law enforcement that such person *believes* to have been stolen, he shall be deemed guilty of larceny thereof.

§ 18.2-108(B), *amended by* 2008 Va. Acts ch. 578 (emphasis added). In short, while Bryant's alleged conduct would have been considered criminal under the current version of the statute, the facts as alleged by Carico — even if proven entirely true — would not have been punishable under the statute as it existed in 2004.

On March 12, 2012, the related civil forfeiture action against Rockyfork's property was dismissed, and the property was released. Bryant claims that the value of the property severely deteriorated due to the storage conditions, and that it was worth a fraction of its value at the time it was seized in 2004.

The plaintiffs contend that Carico violated their constitutional rights by intentionally misrepresenting to the magistrate that the property Bryant purchased in July 2004 was stolen when he in fact knew that it was not stolen, in order to furnish probable cause for Bryant's arrest and the civil forfeiture of Rockyfork's inventory. The plaintiffs also assert that Sheriff Oakes failed to provide training or oversight to Carico regarding the investigation of complex financial crimes and the rights of the accused, including the preservation of evidence.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986) (citations omitted).

The doctrine of qualified immunity, where applicable, acts as an absolute bar to suits against government officials under § 1983. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (explaining that qualified immunity is "an *immunity from suit* rather than a mere defense to liability"). Police officers are entitled to qualified immunity so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine involves a two-step inquiry, which asks "first whether a constitutional violation occurred and second whether the right violated was clearly established." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (internal quotation marks and citations omitted).

Here, the plaintiffs assert a malicious prosecution claim under § 1983, which "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000). To prove such a claim, the plaintiffs must show that the defendants "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). As these elements make clear, "constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." *Id*. Therefore, "subsequent acts of independent decision-makers (e.g., prosecutors,

grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure." *Id.* These intervening causal acts insulate the police officer from liability. *Id.*

Based on the undisputed facts, I must conclude that although the plaintiffs have raised genuine issues of material fact as to the second and third elements of their malicious prosecution claim, there are not sufficient factual issues as to the element of causation to defeat summary judgment. Undoubtedly, a reasonable jury could conclude, based on the evidence in the record, that Deputy Sheriff Carico intentionally misled the state magistrate in order to obtain a warrant for an arrest that otherwise lacked probable cause. The affidavits submitted by Carico to the magistrate in 2004 unequivocally alleged that Bryant purchased property that he knew to be stolen, while omitting the crucial fact that the property itself was not actually stolen but rather borrowed by law enforcement. The affidavits thus left the misimpression that the property purchased by Bryant was stolen when it was actually not. As explained above, this distinction was material — indeed, dispositive — under the Virginia statute governing receipt of stolen property, which only criminalized receipt of property that was actually stolen at the time of the transaction in question. Moreover, the proceedings in question terminated in the plaintiffs' favor, with an acquittal on all charges following a bench trial.

Unfortunately for the plaintiffs, these facts are not in themselves sufficient to prove a malicious prosecution claim, given that grand juries on two separate occasions returned indictments against the plaintiffs. "It has long since been settled by the Supreme Court that 'an indictment, "fair upon its face," returned by a "properly constituted grand jury," conclusively determines the existence of probable cause.'" *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)). Therefore, the subsequent acts of prosecutors in convening the grand juries, and the grand juries' decisions to indict, "constitute[d] intervening superseding causes that br[oke] the causal chain" between the officer's alleged misconduct and the plaintiffs' wrongful prosecution and civil forfeiture. *Evans*, 703 F.3d at 647.

Of course, the general rule that subsequent indictments insulate police officers from liability is not without exception, and only applies "in the absence of evidence that [the officer] misled or pressured the prosecution." *Id.* at 648 (internal quotation marks and citations omitted). Officers may still be liable for malicious prosecution where there is evidence that they "have lied to or misled the prosecutor, failed to disclose exculpatory evidence to the prosecutor; or unduly pressured the prosecutor to seek the indictment." *Id.* at 647-48 (citations omitted); *see also Snider v. Lee*, 584 F.3d 193, 206 (4th Cir. 2009) (Stamp, J., concurring) (noting that officer who presents probable cause evidence to independent

intermediary is not liable for malicious prosecution "unless the officer concealed or misrepresented facts or brought such undue pressure to bear on the intermediary that the intermediary's independent judgment was overborne").

Here, the plaintiffs have simply presented no evidence that Deputy Sheriff Carico misled the prosecutors or the grand juries. Rather, any inference of causation between the officer's actions and the ultimate issuance of either indictment would be entirely a product of speculation. In *Evans*, the Fourth Circuit firmly rejected such an approach to causation in the absence of evidence that the officer affirmatively misled or pressured the prosecutor — even where it might be "reasonabl[y] foreseeab[le]" that an indictment would follow from an officer's alleged misconduct. 703 F.3d at 649 n.5; *see also* Prosser & Keeton, The Law of Torts § 41, at 269 (5th ed. 1984) (noting that "mere possibility" of causation based on "pure speculation and conjecture" is insufficient to establish causation element of tort).

The plaintiffs have the burden of producing evidence on every element of their § 1983 claim. Because they have failed to present any evidence that Carico misled the prosecutors or the grand juries that found probable cause against the plaintiffs, there is not a genuine issue of material fact as to the causation element of their claim. Therefore, defendant Carico is entitled to summary judgment on the plaintiffs' malicious prosecution claim.

III.

The plaintiffs also contend that Sheriff Oakes is liable for Carico's alleged wrongful acts, due to Oakes failure to provide training or oversight in the investigation of complex financial crimes and the preservation of evidence and property seized. (Compl. ¶¶ 15, 20.)

Even if I were to determine that Carico could be liable for violating the plaintiffs' constitutional rights, I would find Sheriff Oakes not liable under a theory of supervisory liability. In order to be liable for a subordinate's unconstitutional conduct under § 1983, the supervisory officer must (1) have had actual or constructive knowledge that his subordinate's conduct posed a pervasive and unreasonable risk of constitutional injury; (2) have responded so inadequately as to show deliberate indifference or tacit authorization; and (3) there was a causal link between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread." *Id.* at 799 (citation omitted). Further, "deliberate indifference" requires a showing of the supervisor's "continued inaction in the face of documented widespread abuses," which ordinarily entails more than "pointing to a single incident or isolated incidents." *Id.* (internal quotation marks and citations omitted). Finally, "the allegations must be sufficient to demonstrate a plausible nexus or affirmative

link between the supervisor's actions and the constitutional deprivation." *Jackson v. Brickey*, 771 F. Supp. 2d 593, 603 (W.D. Va. 2011).

The plaintiffs' claim against Sheriff Oakes, which amounts to his alleged failure to train and supervise Carico in Bryant's case, meet none of these elements. Most problematically, the plaintiffs' case is based on a single incident. They have not presented any evidence that Deputy Sheriff Carico's conduct was "widespread" as opposed to an isolated incident; much less that Sheriff Oakes took "continued inaction" in the face of any pervasive misconduct. Further, given the finding of probable cause by two separate grand juries, the plaintiffs fail to demonstrate a causal link between Sheriff Oakes' actions and any deprivation of the plaintiffs' constitutional rights. Without more, the plaintiffs have failed to assert a § 1983 claim against Sheriff Oakes sufficient to defeat summary judgment.

IV.

For these reasons, it is **ORDERED** that the defendants' Motion for Summary Judgment (ECF No. 22) is GRANTED**.** A separate final judgment will be entered in favor of the defendants and the case will be closed.

ENTER: December 19, 2014

/s/ James P. Jones
United States District Judge